Filed 7/26/22 P. v. Thompson CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MICHAEL THOMPSON,<br><br>    Defendant and Appellant. | G060421<br><br>(Super. Ct. No. C-33433)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Lance Jensen, Judge. Affirmed in part, reversed in part and remanded with directions.

Rebecca P. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Steve Oetting, Acting Assistant Attorney General, Arlene A. Sevidal, Lynne McGinnis and Elizabeth M. Kuchar, Deputy Attorneys General, for Plaintiff and Respondent.

In 1975, appellant Michael Thompson was sentenced to life in prison for two first degree murders. He contends the trial court erroneously denied his recent petition for resentencing for failure to state a prima facie case under Penal Code 1170.95.[1] As respondent concedes, appellant is right with respect to one of the murders, which was carried out by a codefendant. However, as to the other murder, the record of conviction shows Thompson personally acted with malice aforethought so as to render him ineligible for resentencing as a matter of law. Therefore, we reverse the trial court's order and remand for further proceedings as to one of the murder counts and affirm its order as to the other.

FACTUAL AND PROCEDURAL BACKGROUND

At the behest of a man who agreed to pay them $5,000, Thompson and his codefendants John Solis and Robert Sesma agreed to murder Vaudra "Butch" Nunley. As part of their murder plan, defendants lured Nunley to Solis' house late one evening. Nunley arrived at the house with a companion named Rue Steele. When they entered Solis' home, Sesma beat Steele to death, and Thompson severely beat Nunley. Defendants then loaded the victims into the trunk of a car and took them to Thompson's house for burial. However, upon arrival, they discovered Nunley was not dead, so Sesma finished him off with a gunshot to the head. After that, defendants buried the victims in Thompson's backyard and collected their bounty.

Following a joint jury trial, Thompson was convicted of two counts of first degree murder, conspiracy to commit first degree murder, kidnapping and aggravated assault. Sesma was convicted of first and second degree murder, conspiracy to commit second degree murder and kidnapping. And Solis was convicted of two counts of second degree murder and kidnapping. Their convictions were affirmed on appeal in *People v.*

---

[1] All further statutory references are to the Penal Code.

*Solis, et al.* (Sept. 29, 1977, 4 Crim. 7689) [nonpub. opn.], as was Thompson's sentence of life in prison with the possibility of parole.

In 2019, Thompson petitioned to vacate his murder convictions and be resentenced pursuant to section 1170.95, which narrowed the scope of vicarious liability for the crime of murder. The trial court recognized Thompson's jury was instructed on the felony murder rule and the natural and probable consequences doctrine. However, the court found the record of conviction established Thompson personally acted with the intent to kill so as to render him ineligible for resentencing relief. With respect to the targeted victim Nunley, the court found such intent was established by virtue of the jury instructions and verdict on the conspiracy count. And with respect to Steele, the court relied on the principle of transferred intent. In particular, the court found Thompson's "planning for the death of the victim Nunley supplied the necessary premeditation to support the jurors' first-degree murder conviction as to victim Steele[.]" Accordingly, the court denied Thompson's petition in its entirety for failure to establish a prima facie case.

DISCUSSION

Thompson contends the record of conviction fails to support the trial court's finding that he acted with malice toward the victims. He also argues the trial court engaged in improper factfinding in denying his petition. Respondent concedes reversal is required with respect to the murder count involving Steele, and we find that concession well taken. However, we also agree with respondent that Thompson's conviction for murdering Nunley is outside the scope of section 1170.95. He is not entitled to relief on that count.

Thompson's claim is rooted in Senate Bill No. 1437 (SB 1437), which moderated California's murder laws in two ways. First, the bill eliminated the natural and probable consequences theory for the crime of murder by providing, "Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188,

3

subd. (a)(3).)  Second, SB 1437 reined in the felony murder rule so that it can only be applied to nonkillers if they aided and abetted the killer in committing first degree murder, or they were a major participant in the underlying felony and acted in a manner that was recklessly indifferent to human life.  (§ 189, subd. (e).)

SB 1437 also created a statutory procedure, codified in section 1170.95, by which defendants who have been convicted of murder based on the felony murder rule or the natural and probable consequences doctrine may petition for vacatur and resentencing if their conduct did not constitute murder as redefined by SB 1437.  If the defendant's petition makes a prima facie showing to that effect, the trial court must issue an order to show cause and, absent a concession by the prosecution, conduct an evidentiary hearing. (§ 1170.95, subds. (c), (d).)  At the hearing, the prosecution must prove beyond a reasonable doubt the defendant is ineligible for resentencing.  (*Id*., subd. (d)(3).) Otherwise, the court must vacate his murder conviction and resentence him per the terms of section 1170.95.

In *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), our Supreme Court recognized the bar for establishing a prima facie case for resentencing under section 1170.95 is quite low, and the trial court's role in determining whether that bar has been cleared in a given case is limited in a variety of respects.  (*Id*. at pp. 970-972.)  For instance, the trial court must accept the petitioner's allegations as true and refrain from judicial factfinding. (*Ibid*.)  However, the trial court may consider the record of conviction, which includes the jury instructions and verdict forms pertaining to the underlying trial.  (*Ibid*.; *People v. Verdugo* (2020) 44 Cal.App.5th 320, 329-333, overruled on other grounds in *Lewis, supra*, 11 Cal.5th at pp. 961-962.)  And if the record of conviction shows the petitioner is ineligible for resentencing as a matter of law, the trial court may summarily deny his petition without an evidentiary hearing.  (*Ibid*.)

In this case, the record of conviction shows defendants were prosecuted under two theories of first degree murder:  Premeditation and lying in wait. (The jury

4

was also instructed on felony murder, but only in the second degree and Thompson's conviction was found to be a first degree murder.) The lying-in-wait theory pertained exclusively to the Steele killing. The jury was instructed: "Murder which is immediately preceded by lying in wait is murder of the first degree. This instruction applies only to the death of Rue Steele not the death of Butch Nunley. [¶] [Lying in wait means] waiting and watching for an opportune time to act, together with a concealment by ambush or some other secret design to take the other person by surprise. . . . Also, the lying in wait must be for the purpose of killing another or inflicting great bodily injury[.]" Several other instructions also stated that the crime of first degree lying-in-wait murder could be based on either the specific intent to kill or the specific intent to inflict great bodily injury.

Regarding the conspiracy charge, the jury was instructed "defendants are charged with conspiracy to . . . murder . . . Butch Nunley," and unless the defendants had the specific intent to kill him, that crime was not committed. In addition, the jurors were told a conspiracy to commit murder may be of the first or second degree. The judge instructed them conspiracy to commit murder of the first degree exists "where the conspirators with malice aforethought intend[ed] to kill by means of lying in wait" or "where with malice aforethought the conspirators with premeditation and deliberation intend[ed] that the victim be killed."

The jury was also instructed, "Each member of a criminal conspiracy is liable for each act . . . of every other member of the conspiracy if said act . . . is in furtherance of the object of the conspiracy." In addition, "Every conspirator is legally responsible for an act of a coconspirator that follows as one of the probable and natural consequences of the object of the conspiracy even though it was not intended as part of the original plan . . . ." In a related instruction, the jury was told the natural and probable consequences doctrine also applied in the context of aiding and abetting.

5

Thus, the jury clearly had the option of convicting Thompson of first degree murder based on a theory of vicarious or imputed liability. In ruling on Thompson's resentencing petition, the trial court recognized this possibility with respect to Steele's murder, which was solely carried out by codefendant Sesma. However, it reasoned that possibility was largely irrelevant because even if Thompson did not intend to kill Steele, his intent to kill Nunley transferred to Steele and supplied the requisite malice to deny him resentencing relief on the Steele killing.

The problem with this theory, as respondent admits, is that the jury was never instructed on transferred intent. Therefore, while the transferred intent theory may enjoy substantial evidentiary support in the record, it cannot be used to justify the denial of Thompson's 1170.95 petition as to Steele. (See *People v. Secrease* (2021) 63 Cal.App.5th 231, 247, review granted June 30, 2021, S268862 [in reviewing a petition for resentencing under section 1170.95, courts look at what the jury actually found at the defendant's trial, not what it could have found].)

The situation is different regarding Nunley, however. Thompson contends the jury may have convicted him of murdering Nunley in the first degree based on the theory of lying in wait. And because that theory merely required the intent to inflict great bodily injury, the jury did not necessarily find he possessed the intent to kill, i.e., malice. However, by its terms, the lying-in-wait instruction only applied to Steele's murder. Therefore, the jury would have known *not* to apply it in assessing Thompson's culpability for Nunley's death. (See generally *People v. Sanchez* (2001) 26 Cal.4th 834, 852 [jurors are presumed to understand and follow all instructions from the court].)

And the court's conspiracy instructions were worded so as to require the specific intent to kill. The court's general conspiracy instruction made that clear by informing the jury, "In the crime of conspiracy to commit murder . . . there must exist in the minds of the perpetrators the specific intent that Butch Nunley be killed[.]" What's more, the court's instruction defining conspiracy to commit murder in the first degree

also brought this point home to the jury. Although the instruction stated a conviction for that offense could be based on a conspiracy to commit premeditated murder *or* lying-in-wait murder, it expressly stated, as set forth above, that proof of malice was required for *both* of those theories. So even if the jury somehow believed that Thompson was guilty of murdering Nunley under the lying-in-wait theory, his conviction for conspiring to commit first degree murder shows the jury found he acted with the specific intent to kill. (*People v. Medrano* (2021) 68 Cal.App.5th 177.) Therefore, he is not eligible for resentencing relief on the Nunley murder. (*Ibid.*)

In arguing otherwise, Thompson contends the trial court engaged in improper factfinding. As we have explained, that is certainly true for the Steele murder, which the trial court upheld on the theory of transferred intent. However, as for the Nunley murder, the trial court said it based its ruling "as a matter of law" on the jury instructions that were given and the jury's verdict. Since those records are part of the record of conviction (*People v. Verdugo, supra,* 44 Cal.App.5th at pp. 329-333), the court was entitled to consider them. (*Lewis, supra*, 11 Cal.5th at pp. 970-972.)

Thompson nonetheless contends we should not place much stock in the particular instructions the jury received because we do not have a complete record of Thompson's trial. The record of conviction contains a complete set of jury instructions but it does not contain the parties' closing arguments. That is hardly surprising, considering the trial took place almost 50 years ago. Seizing on that void, Thompson contends it is possible the prosecutor may have flouted the law during his closing argument and impermissibly encouraged the jurors to convict him of conspiracy to commit first degree without finding he possessed the requisite intent to kill. That does not even rise to the level of pure speculation. It is a complete flight of fancy. We are not empowered to conjure up misconduct based on an incomplete record.

In any event, the record shows the jury was instructed that it must follow the law as provided by the court, which clearly made the intent to kill a perquisite for

7

finding Thompson guilty of conspiring to murder Nunley in the first degree. Given Thompson's conviction for that offense, he is not entitled to resentencing relief for Nunley's murder.

## DISPOSITION

With respect to Thompson's conviction for murdering Steele, the trial court's order denying resentencing relief is reversed, and the matter is remanded for an evidentiary hearing pursuant to section 1170.95, subdivision (d). In all other respects, the trial court's order is affirmed.


BEDSWORTH, ACTING P. J.

WE CONCUR:


GOETHALS, J.


SANCHEZ, J.

8